UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TRUSTEES OF THE HOLLOW METAL TRUST
FUND, and TRUSTEES OF THE HOLLOW
METAL PENSION FUND,

      Plaintiffs

      - against -

FHA FIREDOOR CORP., and K-D FRAME AND
DOOR CORPORATION,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 30, 2013

12 Civ. 7069

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiffs Trustees of the Hollow Metal Trust Fund (the "Trust Fund") and Trustees of the Hollow Metal Pension Fund (the "Pension Fund," and, collectively, the "Funds") bring this action against FHA Firedoor Corporation ("FHA") and K-D Frame and Door Corporation ("K-D"), asserting various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). On November 30, 2012, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and submitted several affidavits and exhibits that the Court cannot consider, as they are outside the pleadings. See Lefkowitz v. Bank of N.Y., 676 F. Supp. 2d 229, 248-49 (S.D.N.Y. 2009). Recognizing this, Defendants request that the Court convert their motion into one for summary judgment. (See Def.'s Br. at 2; see also Fed. R. Civ. P. 12(d).) In sum, Defendants' arguments are more noise than analysis – "full of sound and fury, signifying nothing." William Shakespeare, Macbeth, Act V. The motion for summary judgment is denied.

## BACKGROUND[1]

      At all times relevant to this litigation, FHA and K-D are alleged to have had substantially

---

[1] Except where otherwise noted, the facts set out below are taken from the Complaint.

1

identical management, business purposes, operations, equipment, customers, employees, office space, contact information and ownership. Between January, 2005 and continuing through at least June, 2012, FHA was party to collective bargaining agreements ("CBAs") with the New York City District Council of Carpenters Local Union 2790, the bargaining representative for a subset of FHA employees. Under the CBAs, FHA was required to contribute to the Funds and submit to audits by the Funds in order to verify that such contributions had been made. One such audit revealed that FHA underpaid the Trust Fund by $124,913.90 and the Pension Fund by $25,258.51 between January 1, 2005 and December 31, 2008.[2]

On July 31, 2009, the Funds gave notice of their intention to arbitrate regarding FHA's delinquent payments. (Graff. Aff. Ex. C.) The Funds prevailed and received an award in the amount of $207,695.87, with $150,172.41 of that amount "representing contributions due to the aforesaid Funds during the period of 1/01/05 through 12/31/2008." (Graff. Aff. Ex. A, at 3.) FHA acknowledges that it did not comply with the arbitration award, nor did it seek to have it vacated or modified. (Cruz Aff. ¶ 7.) Similarly, the Funds failed to enforce the award against FHA. (Id. at ¶ 9.) This ERISA litigation was initiated on September 19, 2012.

## DISCUSSION

### I. Legal Standard

Summary judgment may be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to

---

[2] The Funds also allege, upon information and belief, that FHA has continued to underpay them through at least June, 2012. FHA acknowledges that it has not made any payments to the Funds for "fringe benefits for its employees" from "in or about April 2008 through June 2012." (Cruz Aff. ¶ 2.)

relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial," wherein "a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "In reviewing a summary judgment motion, [the Court] must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

## II.     Analysis

### A.     *Res Judicata*

Defendants assert that the Funds' claims for monetary damages are barred by the doctrine of *res judicata*, as a result of the prior arbitration. "It is well settled that this doctrine serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings." Pike v. Freeman, 266 F.3d 78, 90 (2d Cir. 2001). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" Id. at 91 (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)).

The Funds argue that *res judicata* does not apply because "the arbitrator only determined the Funds' contractual claim against FHA, and lacked the authority to determine the Funds' ERISA claim." (Pl.'s Opp'n at 6.) Defendants bear the burden of proving each element of their defense, see Celotex, 477 U.S. at 322-23, but have failed to submit any evidence suggesting that the arbitration addressed the Funds' ERISA claims, rather than or in addition to their claims for breach of contract. Indeed, Defendants appear to concede that it did not. (See Def.'s Br. at 8

3

("the Complaint and the arbitration proceeding involved the same cause of action, namely breach of the parties collective bargaining agreement").) Neither the Notice of Intention to arbitrate nor the arbitration award mention ERISA as a source of the Funds' claims. (See Graff. Aff. Exs. A, D.) Moreover, the arbitration award supports a strong inference that it dealt exclusively with a contract claim. (See, e.g. Graff. Aff. Ex. A at 1 (describing role of arbitrator as "determin[ing] disputes concerning claims arising from payments due to [the Funds] described in [the] written contract"); 2 (describing FHA's defense that it "was not bound to the . . . CBA"); 4 (finding FHA "was bound by the . . . CBA" and awarding remedies "as required and set forth in the underlying written contract.").) Accordingly, the Court rejects Defendants' argument that *res judicata* precludes the Court from addressing the Funds' ERISA claim on the merits.

B.  Election of Remedies

Defendants argue that the election of remedies doctrine bars the Funds from litigating their claims in federal court, after having received an arbitration award stemming out of the same events. "The election of remedies rule bars the pursuit of alternative relief after a party has 'chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment.'" Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006) (quoting 331 E. 14th St. LLC v. 331 E. Corp., 740 N.Y.S.2d 327 (App. Div. 2002)). "The doctrine, however, 'is harsh and generally disfavored by courts.'" Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 298 (S.D.N.Y. 2011) (quoting In re Riverside Nursing Home, 144 B.R. 951, 958 (S.D.N.Y. 1992)).

The Funds' ERISA claims are not clearly inconsistent with the breach of contract claims that were previously arbitrated. Rather, as Defendants' concede in arguing that *res judicata*

should apply, both "the Complaint and the arbitration proceeding involved . . . FHA's alleged failure to pay fringe benefits for its employees from January 1, 2005 to December 31, 2008." (Def.'s Br. at 8.)  It is well settled that "[t]here is no objection to a claimant pursuing consistent remedies as long as he desires within the periods of limitation, until justice has been administered." Equitable Trust Co. of N.Y. v. Conn. Brass & Mfg. Corp., 10 F.2d 913, 916 (2d Cir. 1926).  Accordingly, "the doctrine of election of remedies does not preclude [the Funds'] from asserting both [contract and ERISA] claims" where the "causes of action  . . . are not inconsistent [and] arise from a single course of events." Copantitla, 788 F. Supp. 2d at 298 (internal quotations omitted).

    C.    <u>Laches</u>

Defendants argue that the doctrine of laches bars the Funds' claims because they "voluntarily waive[d] [their] rights to collect the alleged unpaid fringe benefits . . . by not enforcing [their] arbitration award." (Def.'s Br. at 14.)  "Laches is an equitable defense based on the maxim *vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant, not those who sleep on their rights).  It bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 259 (2d Cir. 1997) (internal quotations omitted).  Nevertheless, "[t]he Supreme Court long ago recognized that, while the doctrine of laches survived as a further limitation upon granting relief in equity, 'laches within the term of the statute of limitations is no defense at law.'" Id. (quoting U.S. v. Mack, 295 U.S. 480, 489 (1935)).  In other words, "when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely" or where the "limitations period [is] borrowed from analogous state law." Id. at 260, 262; see also

Amalgamated Lithographers of Am. V. Unz & Co., Inc., 670 F. Supp. 2d 214, 228 (S.D.N.Y. 2009) ("As a general matter, laches is not a defense to an action filed within the applicable statute of limitations."). Since a six-year statute of limitations applies to ERISA claims brought under 29 U.S.C. § 1132, Miles v. N.Y. State Teamsters Conference Pension & Retirement Fund Emp. Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983), laches is not applicable to the Funds' claims.

### D. Equitable Estoppel

Defendants contend that the Funds are equitably estopped from pursuing their ERISA claims because they "tacitly agreed to amend the [CBA]" by failing to enforce its terms once FHA ceased contributing to the Funds and by subsequently terminating the benefits of FHA employees. (Def.'s Br. at 16.) This argument has no factual support. "[E]quitable estoppel is available on ERISA claims only in extraordinary circumstances" and requires that the defendants "prove (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 109 (2d Cir. 2008) (internal quotations omitted). Defendants do not satisfy any prong of this test.

The Funds' failure to enforce the CBA does not constitute a "material representation to FHA that no fringe benefit contributions would be owed." (Def.'s Br. at 16.) Although the Funds ultimately failed to enforce their arbitration award, FHA does not explain how the Funds' 2009 arbitration suggested that FHA was not responsible for its contractual contributions. Even if the Funds had not taken any action whatsoever, federal courts "have repeatedly barred employers from invoking as a defense an oral or otherwise unwritten agreement with the union not to enforce the written terms of the collective bargaining agreement with respect to . . .

contributions." New York State Teamsters Conference Pension & Retirement Fund v. UPS, 382 F.3d 272, 280 (2d Cir. 2004) (collecting cases); see e.g., Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 316 (2d Cir. 1990) ("ERISA . . . prohibits [defendant] from raising as a defense . . . the union's abandonment of the collective bargaining agreement containing [defendant's] promise to contribute to the Funds" where union failed to enforce CBA for over three decades).

Next, Defendants' summarily state that "FHA relied upon [the Funds'] course of conduct and material representation," without offering any explanation as to how they did so. (Def.'s Br. at 16.) Nor do Defendants specify any injury caused by their reliance, or explain why such injury is unjust. Defendants fail to demonstrate that equitable estoppel should bar the Funds' claims.

### E. Alter Ego

Defendants assert that the Funds' have failed to adequately plead that K-D is FHA's alter ego and that it cannot be expected to contribute to funds for both FHA's union employees and its own. It cites no authority for the latter argument, only stating summarily that it would be "an illogical outcome." (Def.'s Br. at 17.) In this matter, of course, "'[t]he focus of the alter ego doctrine is on . . . an employer's attempt to avoid the obligations of a collective bargaining agreement,'" but "[a]n employer found to be the alter ego of another is automatically responsible for the other's legal and contractual obligations under the labor laws." Newspaper Guild of N.Y. v. NLRB, 261 F.3d 291, 298-99 (2d Cir. 2001) (quoting Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 748 (2d Cir. 1996)).

"The test of alter ego is 'flexible' and requires 'weigh[ing] the circumstances of each individual case.'" Id. at 299 (quoting Goodman Piping, Prods., Inc. v. NLRB, 741 F.2d 10, 11

(2d Cir. 1984).  Though there is no exhaustive list of factors, courts "focus[] on commonality of (i) management, (ii) business purpose, (iii) operations, (iv) equipment, (v) customers, and (vi) supervision and ownership."  Id. at 294.  The Funds' summarily pleaded each of these factors, as well as alleging that "FHA and K-D operated at the same locations[,] . . . FHA and K-D shared common employees who performed work covered by the CBAs[,] . . . K-D paid employees for work covered by the CBAs that the employees performed for FHA[,] . . . employees of FHA and K-D interchanged between the companies[,] . . . [and that] FHA and K-D acted as a single integrated enterprise."  (Compl. ¶¶ 19-24.)  These allegations adequately plead that FHA and K-D are alter egos.

### F. Statute of Limitations

Defendants argue that the Funds' claims are barred, in part, by the six-year statute of limitations applied to ERISA, pursuant to analogous state law.  See Miles, 698 F.2d at 598 (2d Cir. 1983).  Defendants concede both that "the statute of limitations does not begin to run until the Plaintiffs had reason to know that FHA was not paying its fringe benefits" (Def.'s Br. at 18-19 (citing La Barbera v. A. Morrison Trucking, Inc., No. 08 Civ. 3095, 2011 WL 703859, at *5 (E.D.N.Y. Feb. 18, 2011)), and that this occurred "as early as April 2008."  (Id. at 19.)  Accordingly, this matter was well within the statute of limitations when it was brought on September 19, 2012.

### G. Standing

Finally, Defendants' contend that the Funds lack the right to bring this action because Defendants' employees decertified their union in June 2012, voiding the CBA. (Def.'s Reply at 7-8.)  Since this argument was first raised in Defendants' reply brief and the Funds lacked an adequate opportunity to respond to it, the Court declines to address it.  See U.S. v. Pepin, 514

F.3d 193, 203 n.13 (2d Cir. 2008) (courts "'generally do not consider issues raised in a reply brief for the first time'" (quoting In re Harris, 464 F.3d 263, 268-69 n.3 (2d Cir. 2006))).

## CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED. The Clerk of Court is directed to terminate the motion at docket number 7.

Dated: New York, New York
April 30, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge